```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
 DOUGLAS FERGUSON,                                             :
                                                               :
                     Plaintiff / Counter-Defendant,:
                                                               :   13 Civ. 4468 (VEC)
              -against-                                        :
                                                               :
 MATTHEW FERRANTE, Individually,  and                          :
 AURORA INFORMATION SECURITY &                                 :
 RISK, LLC,                                                    :
                                                               :
                     Defendants / Counter-Claimants.:
-------------------------------------------------------------- X
```

**MEMORANDUM OPINION AND ORDER**

VALERIE CAPRONI, District Judge:

      This discovery dispute stems from litigation over alleged mutual noncompliance with a settlement agreement between an employer and its former employee.  The Court assumes the parties' familiarity with the facts, history, and procedural posture of the case.  In a letter dated March 21, 2014, the defendants moved to compel Ferguson's compliance with certain of the defendants' interrogatories and document requests.  Ferguson responded by letter on March 25, 2014, arguing that the disputed interrogatories are overly broad or pertain to matters not in dispute in this case.[1]  For the following reasons, the defendants' request is DENIED as to Interrogatories 7, 9, and 15 and Document Requests 8, 9, 12, and 13.  The defendants' request is GRANTED and the plaintiff is ORDERED to comply with Interrogatories 5, 8, 16, and 17 (as they are modified below), and Document Requests 7 (in full), 10, and 11 (as they are modified below).  The defendants' request for costs and attorneys' fees is DENIED.

---

[1] Both parties' submissions were well above the page limit imposed by the Court's Individual Practices in Civil Cases.  The defendants assert that "the volume and complexity of the issues presented" in this dispute justify exceeding those limits; the plaintiff asserts that he could not respond adequately to his opponents' oversized brief without himself running over the page limit.  *See* Docs. 28 at 8 n.3 and 31 at 1 n.1.  The Court disagrees with both.  Counsel are advised to adhere to page limits in future submissions.

## DISCUSSION

Local Civil Rule 33.3 governs the use of interrogatories in the Southern District of New York. It permits interrogatories as to the identification of witnesses, the computation of damages, the existence of documents, any information that can best be obtained through interrogatory rather than document request or deposition, and any other information that a Court orders discoverable through interrogatory.[2] Although the defendants note that they do not understand the interplay between Rule 33.3 and Federal Rule of Civil Procedure 33(a)(2), they do not challenge the propriety of the Local Rule. *See* Doc. 28 at 3 n.2. Local Rule 33.3 therefore guides the Court's analysis of the various disputed interrogatories.

**Interrogatory 5**

Interrogatory 5 asks Ferguson: "Following the termination of [y]our relationship with Aurora, and concerning [y]our work for Aurora, identify all [p]ersons or entities to whom [y]ou have given, shared, sold, or described [y]our work product to [sic] while [y]ou were at Aurora." Doc. 28 Ex. A at 4. Although the interrogatory is oddly worded, the defendants have clarified that it applies only to Ferguson's communications after his employment at Aurora was terminated. Doc. 28 at 3. Thus, the Court understands the interrogatory to be: "For the period from January 12, 2012, to the present, identify all persons or entities other than those affiliated with Accuvant, McAfee, and Barclays, to whom you gave, shared, sold or described your Aurora work product." The defendants contend that this information is relevant to their "assert[ion] that plaintiff breached the NDA as well as his duty of loyalty arising from his contractual commitments to Aurora as well as that which arises at common law." *Id.* (citing Defendants' Answer, Defenses and Counterclaims ("Counterclaims")).

The defendants' fifth counterclaim asserts that "[t]he terms of Ferguson's contractual arrangement with Aurora imposed on him a duty of loyalty." Counterclaims ¶ 145. Although the pleadings do not clearly identify the source of this duty of loyalty, the defendants argue that

---

[2] In relevant part, Local Civil Rule 33.3 provides:

>   (a)   Unless otherwise ordered by the Court, at the commencement of discovery, interrogatories will be restricted to those seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents, including pertinent insurance agreements, and other physical evidence, or information of a similar nature.
>   (b)   During discovery, interrogatories other than those seeking information described in paragraph (a) above may only be served (1) if they are a more practical method of obtaining the information sought than a request for production or a deposition, or (2) if ordered by the Court.

such a duty stemmed from Paragraph 5 of the Non-Disclosure Agreement ("NDA"), which prohibited Ferguson from, *inter alia*, "directly or indirectly[] solicit[ing] any individuals or business who were customers or clients of" Aurora.  This obligation was modified by the Settlement Agreement, which permitted Ferguson to assume and to solicit business from McAfee, Accuvant, and Barclays Bank.  Settlement Agreement ¶¶ 2-3.  The Settlement Agreement was clear that it modified but did not "replace" the NDA.  *Id.* ¶ 2.

For the purposes of this discovery dispute, the defendants have sufficiently pled the existence of *some* duty not to indirectly solicit former Aurora clients other than McAfee, Accuvant, and Barclays Bank.  The motion to compel the plaintiff to respond to the inquiry as restated above is therefore GRANTED.[3]

**Interrogatories 7, 8, and 9**

These interrogatories are all related to Ferguson's receipt of money from business relationships.  Interrogatory 8 asks Ferguson to identify third parties that have paid Ferguson, Pharos Security, or any other entity owned by Ferguson since 2010.  This interrogatory is a very practical way of identifying witnesses who might have information relevant to the defendants' fifth counterclaim.  Accordingly, this interrogatory is consistent with Local Rule 33.3(a) and (b). Business that was obtained from customers who were not previously Aurora clients, however, is irrelevant to any alleged breach of any existing "duty of loyalty" arising from the NDA. Accordingly, the defendants' motion to compel a response to Interrogatory 8 is GRANTED IN PART and DENIED IN PART.  The plaintiff must respond to Interrogatory 8 but only insofar as it seeks information regarding payments received from persons or entities who are or were previously customers or clients of Aurora.

Interrogatories 7 and 9 both request identifying information of certain bank accounts. This information can efficiently be obtained from Ferguson at a deposition.  The Court takes no position whether a motion to quash a third-party subpoena served on Ferguson's banks for detailed banking information covering the same period would be successful – the resolution to that question may depend, in part, on responses to the other interrogatories submitted and to the

---

[3] The Court expresses no opinion as to whether the defendants would be entitled to discover any disclosures Ferguson made between the time when he effectively stopped working for Aurora and the time that he was formally terminated pursuant to the Settlement Agreement – a time potentially relevant to the defendants' fifth counterclaim. Because the defendants are clear that Interrogatory 5 is limited to the period "following [Ferguson's] termination with Aurora," and because Ferguson's final date of association with Aurora was January 12, 2012, the period prior to that date is not covered by the interrogatory.

precise information that might be sought from the banks. For now, the defendants' motion to compel responses to Interrogatories 7 and 9 is DENIED. *See, e.g., J. Goldman & Co., L.P. v. Kowal*, No. 96-cv-7868(DAB)(HBP), 1997 WL 452332, at *1 (S.D.N.Y. Aug. 8, 1997) ("To the extent the interrogatories seek information beyond the identification of persons and transactions, depositions are more practical vehicles for obtaining the information."); *see also In re Weatherford Int'l Sec. Litig.*, No. 11-cv-1646(LAK)(JCF), 2013 WL 5788680, at *2-3 (S.D.N.Y. Oct. 28, 2013).

**Interrogatories 15, 16, and 17**

These interrogatories seek information relating to Ferguson's claims against the defendants for the misappropriation and conversion of trade secrets and confidential business information. *See* First Am. Compl. ¶¶ 91-97. The First Amended Complaint and Ferguson's subsequent submissions to this Court highlight several Aurora products that Ferguson alleges incorporate his trade secrets. *Id.* ¶ 92, Doc. 31 at 5. Those submissions do not, however, clarify "with particularity the specific 'trade secrets and confidential business information' mentioned in [two clauses of] the Amended Complaint that Ferrante and Aurora allegedly appropriated and converted." Interrogatory 16. Judge Failla recently explained the importance of pleading trade secrets with particularity; without knowing the specific secrets at issue, the defendants run the risk of re-using the secrets and the Court is unable to evaluate whether and to what extent they are doing so. *See Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, --- F. Supp. 2d ---, 2014 WL 812820, at *23-27 (S.D.N.Y. March 3, 2014). Insofar as Interrogatories 16 and 17 require Ferguson particularly to identify the allegedly stolen trade secrets, the defendants' motion to compel a response is GRANTED. Ferguson's response must contain more than a mere naked assertion that such secrets are used in specific Aurora products. On the other hand, to the extent Interrogatories 16 and 17 seek "the full basis for the belief" that the identified information constitutes a trade secret, this can be obtained at Ferguson's deposition. In short, the defendants' motion to compel responses to Interrogatories 16 and 17 is GRANTED in part and DENIED only as to the requirement that Ferguson "state the full basis for these beliefs."

Interrogatory 15 asks Ferguson to identify and specifically describe any use that Ferguson has made of the identified trade secrets since he left Aurora. The Court fails to understand how Ferguson's use of Ferguson's alleged trade secrets is relevant to this action, and the defendants have argued only that knowing this information will help them to identify the trade secrets at

issue.  Because the identification of the trade secrets will be provided through the response to Interrogatories 16 and 17, the defendants' motion to compel a response to Interrogatory 15 is DENIED.

**Document Requests 7 and 10**

Document Request 7 requires Ferguson to produce all documents and communications generated, received, or sent concerning Pharos Security while Ferguson was still working with Aurora or Ferrante.  This request is directly relevant to the defendants' counterclaim that Ferguson breached his duty of loyalty.   Ferguson objects that the time period is vague, perhaps because he was still nominally employed by Aurora for months prior to his formal termination.  The Court understands the time period of this document request to run through the date of the Settlement Agreement; the time period is, therefore, clear.  Ferguson also alleges that this demand is focused on two clients whom Ferguson admittedly brought from Aurora to Pharos, even though "Aurora agreed to allow Mr. Ferguson to solicit those companies for Pharos to take over their accounts."  Doc. 31 at 4.  Ferguson may be right about what the defendants are really interested in, but documents responsive to this request could also reveal communications with other clients undertaken in violation of Ferguson's duty of loyalty to the defendants.  In short, Ferguson's objections are without merit, and the defendants' motion to compel production is GRANTED as to Document Request 7.

Document Request 10 seeks all documents and communications between Pharos Security and any present or former Aurora client from the inception of Pharos Security through to the present.  To the extent Document Request 10 calls for documents reflecting communications between Pharos and present or former Aurora clients on or before January 12, 2012, the material is relevant to the fifth counterclaim and the defendants' motion to compel production is GRANTED.  The defendants asserted orally that a breach of the non-compete provision of the NDA is subsumed within this counterclaim for breach of the duty of loyalty.  Without agreeing at this stage that the defendants' argument about the scope of the claim of breach of duty of loyalty is entirely defensible, the Court believes that discovery can proceed on that theory.  Thus, to the extent Document Request 10 calls for documents reflecting communications between Pharos and present or former Aurora clients other than Accuvant, McAfee, and Barclays Bank (entities Ferguson was expressly permitted to solicit), between January 13, 2012 and January 12, 2014 – which marks the end of the NDA's non-solicitation period – the defendants' motion to

compel production is GRANTED for those communications that constitute solicitations. The motion to compel production of Pharos's communications after January 12, 2012, that are not solicitations and therefore could not be a violation of the NDA's non-solicitation clause, is DENIED, as is the motion to compel production of any communication after January 12, 2014.

**Document Requests 8, 9, and 11**

These requests pertain to the business records of Pharos Security. Document Request 8 asks for Pharos's "marketing or advertising budgets from its inception to present" and Document Request 9 seeks "[a]ll documents and communications used by Pharos Security to establish the pricing of its products and services." Neither request is relevant to Ferguson's claims or to the defendants' counterclaims as neither has to do with the asserted ways that Ferguson breached the Settlement Agreement or to Ferguson's alleged breach of his duty of loyalty. The motion to compel production is therefore DENIED as to Document Requests 8 and 9.

Document Request 11 asks for "[a]ll invoices, statements, bills, demands/applications for payment, requisitions, or the like" between Pharos and "any client of Pharos Security" from its inception to the present. This request is overly broad. To the extent Pharos's clients were engaged before Ferguson formally departed Aurora on January 12, 2012, their invoices could be relevant to the defendants' fifth counterclaim. Similarly, invoices to former Aurora clients (other than Accuvant, McAfee, and Barclays) during the two year non-compete period could be relevant to the fifth counterclaim. The motion to compel production is therefore GRANTED IN PART as to Document Request 11, insofar as it seeks the requested records for any client of Pharos Security that was a client before January 12, 2012, and for any client, aside from Accuvant, McAfee, and Barclays, that was previously a client of Aurora and engaged Pharos prior to January 12, 2014.

**Document Requests 12 and 13**

These requests seek Ferguson's and Pharos's communications with McAfee and Accuvant, two Aurora clients that Ferguson brought to Pharos. Ferguson has offered to:

> produce responsive communications with [these organizations] dated during the period July 2010 up through January 12, 2012, and communications . . . after January 12, 2012[,] that concern solicitation of [them] as [] client[s] or solicitation from [these organizations] to become [] client[s] of Pharos Security and/or Plaintiff, and/or payment by [these organizations] for work performed by or on behalf of Aurora.

The defendants assert that this limited response would not include documents tending to show that Ferguson breached the Settlement Agreement's non-disparagement clause[4] or that he breached the Settlement Agreement "by failing to pay Aurora 10% of the gross billings received from these entities." Doc. 28 at 7.  The Court agrees.

The defendants' counterclaims, however, only assert that Ferguson breached the Settlement Agreement "by failing to deliver the promised data back to Aurora in a useable fashion." Counterclaims ¶ 128.  There is no counterclaim alleging that Ferguson failed to pay the required referral fee or disparaged Aurora after his departure.  Nor does any other portion of the defendants' Answer make documents about whether Ferguson paid defendants ten percent of the billings from Accuvant or McAfee or disparaged Aurora after January 12, 2012, relevant.  Although the defendants' Second Affirmative Defense alleges that Ferguson materially breached the Settlement Agreement, by its terms it limits that defense to the breaches "set forth in the Counterclaims below." Answer ¶ 106.

Ferguson's solicitation of Aurora clients is clearly relevant to the defendants' assertion that he breached his duty of loyalty; the plaintiff has, however already agreed to provide such documents.  The defendants' motion to compel additional production in response to Document Requests 12 and 13 is therefore DENIED.

## CONCLUSION

For the reasons stated above, the defendants' motion to compel production is DENIED as to Interrogatories 7, 9, and 15 and Document Requests 8, 9, 12, and 13.  The defendants' motion is GRANTED and the plaintiff is ORDERED to comply with Interrogatories 5, 8, 16, and 17 as modified and Document Requests 7 in full and 10 and 11 as modified.  The defendants' request for costs and attorneys' fees is DENIED.  Pursuant to the parties' stipulation of March 26, 2014 (Doc. 32), the plaintiff is ORDERED to re-file his letter of March 18, 2014, with the redacted attachments included in full.

**SO ORDERED.**

**Date: April 3, 2014**  VALERIE CAPRONI
       **New York, NY**          United States District

---

[4] The Court notes that a breach of the non-disparagement clause might be covered by the fifth counterclaim as a solicitation for those organizations to leave Aurora for Pharos; however, in this instance the Court need not decide whether those two categories of communications are identical.