```
                                                            USDC SDNY
                                                            DOCUMENT
                                                            ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                                DOC #:_____
SOUTHERN DISTRICT OF NEW YORK                               DATE FILED: 5/27/2015
```

------------------------------------------------------------ X
DOUGLAS FERGUSON,                                :
                                                 :
              Plaintiff / Counter-Defendant,:
                                                 :    13-CV-4468 (VEC)
              -against-                  :
                                                 :    OPINION & ORDER
                                                 :
MATTHEW FERRANTE, Individually, and              :
AURORA INFORMATION SECURITY &                    :
RISK, LLC,                                       :
                                                 :
              Defendants / Counter-Claimants.:
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

       This case stems from Plaintiff's acrimonious departure from Defendant Aurora Information Security & Risk, LLC, a cybersecurity company owned by Defendant Ferrante. Ferguson and Ferrante had been friends; their split led to messy allegations and threats of litigation. The parties negotiated a settlement agreement, but the settlement agreement could not withstand the parties' mutual disdain and uncooperative postures. A miscommunication that could have been remedied by a simple telephone call escalated instead into mutual breach of the agreement, unproductive finger-pointing, and federal court litigation that has undoubtedly already cost the parties more than is at issue in the case. The parties have cross-moved for summary judgment on all but one of the claims. The parties' motions for summary judgment are granted in part and denied in part. Plaintiff's request for a declaratory judgment is dismissed for lack of a case or controversy.

## BACKGROUND[1]

Douglas Ferguson and Matthew Ferrante met in 2008, when both were employed by Barclays Bank in London as information security professionals. Pl. 56.1 ¶ 4.[2] In early 2010, Ferrante told Ferguson about his plan to leave Barclays to work at Aurora, a New York-based information security business founded by Ferrante and his wife. *Id.* ¶¶ 5-6. Although the parties do not agree on who initiated the conversations, the men do agree that they soon began discussing the possibility that Ferguson would also leave Barclays and help to launch and develop Aurora. Defs. 56.1 Resp. ¶ 7. Ferguson and Ferrante discussed, *inter alia*, compensation and Ferguson's role in the fledgling company. *Id.* ¶ 8. In July 2010 Ferguson resigned from Barclays and began working for Aurora. *Id.* ¶ 9. The same month, Ferguson signed a Confidentiality, Non-Disclosure and Non-Solicitation Agreement ("NDA") that limited his rights to use and disclose Aurora's confidential information. Ferrante Decl., Dkt. 58, Ex. B ¶ 5.

In 2010, Ferrante "gave Ferguson the titles 'Co-founder' and 'Managing Director' of Aurora[] and affirmatively represented him as such to others." Pl. 56.1 ¶ 24. The parties had ongoing discussions regarding Ferguson's status with Aurora, Defs. 56.1 Resp. ¶ 27; Ferguson asserts that Ferrante assured him that Ferrante was taking steps to formalize Ferguson's equity ownership of Aurora, Pl. 56.1 ¶ 27. Ferguson contributed money to Aurora and brought in clients but did not receive compensation or benefits for his efforts from Aurora. *Id.* ¶¶ 25-26, 29-30. Ferguson's work included the development of Aurora's website and the creation of internal financial and organizational documents and external marketing materials, in addition to

---

[1] The facts discussed in this section are undisputed, except where explicitly noted.

[2] Because the parties cross-moved for summary judgment, each party has submitted a statement of material facts pursuant to Local Rule 56.1 and a response to the other party's submission. The Court refers to the parties' statements as "[Party's] 56.1" and to their responses as "[Party's] 56.1 Resp."

developing (or assisting the development of) some of Aurora's service products. *Id.* ¶ 20, Ferguson Decl. ¶ 19. The parties dispute whether Ferrante offered Ferguson equity in Aurora, but both agree that Ferguson did not in fact receive an equity position. Defs. 56.1 Resp. ¶ 31.

In September 2011, the parties and their attorneys spoke by telephone to resolve the uncertainties surrounding Ferguson's status. *Id.* The call did not go well, and shortly thereafter the parties began to negotiate Ferguson's departure from Aurora. Defs. 56.1 ¶ 8, Pl. 56.1 ¶ 34. In October, Ferguson began a rival information security business, Pharos Security Ltd., based in the United Kingdom. *Id.* ¶ 32. Ferguson continued his efforts on Aurora's behalf even after he founded Pharos and asserts that he told Ferrante of his new company within two weeks of its launch. *Id.* ¶¶ 32-33.

On January 12, 2012, the parties finalized the terms of Ferguson's separation from Aurora. *See* Ferrante Decl. Ex. A ("Settlement Agreement"). The Settlement Agreement stated that Ferguson and Aurora wished to terminate their relationship "without resorting to litigation," *id.*, and included a mutual release provision, pursuant to which the parties agreed to release each other from any claims that existed at the time the Settlement Agreement was executed, *id.* § 12. The Settlement Agreement contemplated that Aurora would make a number of payments to Ferguson (whom it described as "at all times . . . an independent contractor," *id.* § 1), including net profits from clients Ferguson had brought to Aurora and a number of cash payments. *Id.* §§ 5, 7. The Settlement Agreement also incorporated the NDA and required Ferguson, within three business days, to "return to Aurora all physical and electronic data belonging to Aurora which is defined as Confidential Information in the [NDA]." *Id.* §§ 2, 6(A). Pursuant to Paragraph 17, Ferrante assumed personal responsibility for Aurora's debts to Ferguson in the event that Aurora became insolvent. *Id.* The Settlement Agreement was signed by Ferguson and

by Ferrante as Managing Member for Aurora; it was also signed separately by Ferrante in his individual capacity "with respect to paragraph 17 only." *Id.*

Following execution of the Settlement Agreement, Aurora paid Ferguson approximately $74,000. Defs. 56.1 ¶ 12. Ferguson sent Aurora a DVD ostensibly containing Aurora files and data shortly thereafter, Pl. 56.1 Resp. ¶ 16. The files were encrypted, and the password that Ferrante received from Ferguson via a trans-Atlantic text message did not unlock the files. Apparently a caret (^) in the true password was represented as a double underscore (__) in the message that Ferrante received.[3] *Id.* ¶¶ 17, 19-20. Ferrante informed Ferguson that he could not open the files; Ferguson did not offer any solution that permitted Ferrante to open the files on the DVD. *Id.* ¶¶ 22-23. Neither man called to other to confirm the password orally.

When Aurora was unable to open the files, Defendants stopped making payments to Ferguson, instead paying the money otherwise due under the Settlement Agreement into an escrow account. Defs. 56.1 ¶ 27. Although the parties engaged in some additional talks, they were unable to reach a new settlement, owing at least in part to Defendants' unwillingness to release Ferguson from liability for his use of Aurora's proprietary information and materials. Pl. 56.1 ¶ 48. Accordingly, in June 2013, Ferguson sued Aurora and Ferrante. Ferguson sued: Aurora for breach of the Settlement Agreement, First Am. Compl. ("FAC") ¶¶ 73-76; Ferrante for fraud and fraudulent inducement, *id.* ¶¶ 86-90; and Aurora and Ferrante for a declaratory judgment that Ferguson owns certain "trade secrets and business information" that he created while he was working for Aurora, *id.* ¶¶ 98-104. Not to be outdone (or perhaps subscribing to the old adage that the best defense is a good offense), Defendants counterclaimed, alleging that

---

[3]    Because all data on Ferguson's phone was subsequently deleted, there is no conclusive evidence that Ferguson *sent* the correct password. The record confirms that Ferrante *received* an incorrect password, and subsequent investigation revealed that the transmission of a caret in trans-Atlantic text messages yields a double underscore on the recipient's telephone. Rasey Opp. Decl., Dkt. 74, Ex. F.

Ferguson: breached the Settlement Agreement prior to their refusal to pay, Answer & Countercl. ¶¶ 127-30; fraudulently induced Defendants to execute the Settlement Agreement, *id.* ¶¶ 139-43; and breached his duty of loyalty to Aurora, *id.* ¶¶ 144-47.[4]

The case was reassigned to the undersigned in March 2014. After a combative discovery process, the parties filed cross-motions for summary judgment that, if granted, would not quite entirely dispose of the case. For the following reasons, both motions are granted in part and denied in part.

## DISCUSSION

### I.  Defendants' Motion for Summary Judgment

Defendants move for summary judgment on all of Plaintiff's remaining claims. Although issues of fact preclude summary judgment as to Ferguson's claim against Ferrante for fraud and fraudulent inducement, summary judgment is appropriate as to Ferguson's claim for breach of contract, and Ferguson's request for declaratory judgment is dismissed for lack of jurisdiction.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks omitted)). Courts "'construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant.'" *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (*per curiam*)

---

[4] The FAC and Counterclaims both contained several additional claims that were dismissed by stipulation. Dkt. 55.

(quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 79-80 (2d Cir. 2009) (alteration omitted)).

### A. Ferguson's Breach of Contract Claim

Ferguson asserts that Aurora breached the Settlement Agreement by failing to make its final payments under the agreement – Aurora paid approximately $22,000 into an escrow account, rather than paying it to Ferguson. Aurora asserts that the reason that it did not pay Ferguson as required by the Settlement Agreement was that Ferguson breached the contract.

"The essential elements of a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach." *El-Nahal v. FA Mgmt., Inc.*, 126 A.D.3d 667, 668 (2d Dep't 2015);[5] *see also Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011). In their motion, Defendants challenge only Plaintiff's performance pursuant to the contract.

For the purposes of Defendants' motion, the Court takes all facts in the light most favorable to Ferguson and resolves all ambiguities in Ferguson's favor. *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015). Accordingly, the Court assumes, for the purpose of this motion, that Ferguson transmitted the correct password to Ferrante and that, but for a corruption of the password on its trip across the Atlantic, Ferrante would have been able to open the files that Ferguson provided. The Court further assumes that the files on the DVD constituted all of the files that Ferguson was required to provide under the Settlement Agreement. It remains undisputed, however, that Ferrante did not receive the information in a usable form and that the password he received was not the password necessary to open the files.

---

[5] Section 13 of the Settlement Agreement specifically provides that it is governed by New York law.

Ferguson does not argue that he can sustain a cause of action for breach of contract without establishing that he performed under the contract. *Cf. Navilia v. Windsor Wolf Rd. Props. Co.*, 249 A.D.2d 658, 661 (3d Dep't 1998). Accordingly, the question is whether there is any evidence from which a factfinder could conclude that Ferguson complied with the terms of the contract.

New York courts regularly grant defendants summary judgment on a contract action when they can establish that they were prepared to perform under a contract and failed to do so because the plaintiffs did not perform in the first instance. *See, e.g., Iacono v. Pilavas*, 125 A.D.3d 811, 812 (2d Dep't 2015) (dismissing breach of contract claim against sellers of a home because the plaintiff did not show up to the closing). While there is a question of fact as to whether Ferguson *intended* to send the wrong password to Ferrante – and Ferguson likely has the better argument, notwithstanding Defendants' assertions that he "spoliated" evidence – contracts law does not account for plaintiffs' intention to perform; defendants are entitled to insist on actual performance. *See Brualdi v. IBERIA*, 79 A.D.3d 959, 960 (2d Dep't 2010) (dismissing breach of contract claim against airline that cancelled tickets purchased online because plaintiff's credit card was declined).

Ferguson asserts that Defendants are partly to blame for his breach (although he does not explain the legal significance, if any, of his finger-pointing). Both sides certainly share blame in this case. When Ferrante discovered that the password Ferguson sent did not unlock the files on the disc, he and his attorneys declined to call Ferguson or his attorney to verify the password, despite an email from Ferguson's attorney suggesting that they could verify the password over the telephone. Ferguson Opp. Decl. ¶¶ 66, 69, Ex. 25. Defendants insisted on resolution of the issue, presumably by the provision of a new disc with a different password, before they would release from escrow the money they owed Ferguson. Ferrante Decl. Ex. I; *see also id.* Ex. J.

7

Stubbornly believing that he had fulfilled his contractual obligations (despite his former colleague's insistence that the password he received would not open the files), Ferguson refused to provide additional information to Defendants (or provide the password in a manner that enabled them to access the information that he already provided (for example, by calling Defendants and orally reciting the password)).  Ferguson Decl. Ex. L.  In light of Ferguson's insistence that he had no unperformed obligations outstanding, Defendants' decision to pay money into escrow was a responsible course.  There is no evidence from which a factfinder could find that Plaintiff performed under the contract; accordingly, Defendants are entitled to summary judgment as to Plaintiff's first cause of action.  *Cf. Giuffre v. Delta Air Lines, Inc.*, No. 10-CV-1462(DLI), 2012 WL 3988981, at *4-5 (E.D.N.Y. Sept. 11, 2012).

### B. Ferguson's Fraud and Fraudulent Inducement Claim

Next, Defendants move for summary judgment on Ferguson's claim for fraud and fraudulent inducement.  Ferguson alleges that Ferrante induced him to leave Barclays by deliberately misrepresenting Ferguson's role and compensation at Aurora and Aurora's plans for a presence in the United Kingdom.  FAC ¶¶ 86-90.  Ferguson alleges that he "reasonably and justifiably relied upon Ferrante's false representations to resign from his position at Barclays," *id.* ¶ 89, losing his salary and benefits in the process.  Ferrante seeks summary judgment, asserting that the Settlement Agreement unambiguously resolved these claims and that Ferguson was not "induced" to leave Barclays by any promises that Ferrante made.  Neither argument is persuasive.

#### 1. The Settlement Agreement's Release Does Not Apply to Claims Against Ferrante

Ferrante argues that Ferguson's claims are foreclosed by the Settlement Agreement's release, which provides that "the parties agree to release each other from all actions, causes of

action, suits, . . . claims, counterclaims and demands whatsoever (collectively, '[c]laims'), except for claims arising out of the breach of this agreement or those arising as a direct result of gross negligence, fraudulent conduct or willful misconduct of a party hereto (including its principals, employees and agents)." Settlement Agreement § 12. Plaintiff does not dispute the validity of the release but asserts that it does not apply to claims against Ferrante personally. Ferguson's fraud and fraudulent inducement claims is asserted against Ferrante only, not against Aurora.

"Only where the language [of a contract] is unambiguous may the district court construe it as a matter of law and grant summary judgment accordingly." *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990). A contract is unambiguous "if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (citation omitted). "[A] written agreement that is complete, clear and unambiguous on its face must be interpreted according to the plain meaning of its terms, without the aid of extrinsic evidence." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (citations, alteration and internal quotation marks omitted). On the other hand, a contract is ambiguous if it is capable of "'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 53 (2d Cir. 2012) (quoting *World Trade Ctr. Props., LLC v. Hartford Fire Ins. Co.*, 345 F.3d 154, 184 (2d Cir. 2003) (internal quotation marks omitted)). "Where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate." *Thompson*, 896 F.2d at 721 (citing *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1559 (2d Cir. 1989)).

Release provisions are governed by the same principles that govern contracts. *Wells v. Shearson Lehman/Am. Express, Inc.*, 72 N.Y.2d 11, 19 (1988). "'When the words of the release are of general effect the release is to be construed most strongly against the releasor,' and the burden is on the releasor to establish that the release should be limited.'" *Middle E. Banking Co. v. State St. Bank Int'l*, 821 F.2d 897, 907 (2d Cir, 1987) (quoting *Mt. Read Terminal, Inc. v. LeChase Constr. Corp.*, 58 A.D.2d 1034, 1035 (4th Dep't 1977) (internal citation omitted)). Nevertheless, "'a release may not be read to cover matters which the parties did not desire or intend to dispose of.'" *Metz v. Metz*, 175 A.D.2d 938, 939-40 (3d Dep't 1991) (*per curiam*) (quoting *Cahill v. Regan*, 5 N.Y.2d 292, 299 (1959)). "A release will not be given effect unless it contains an 'explicit, unequivocal statement of a present promise to release a party from liability.'" *Peterson v. Regina*, 935 F. Supp. 2d 628, 635-36 (S.D.N.Y. 2013) (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n ex rel. Zanuck v. Gillaizeau*, 766 F.2d 709, 713 (2d Cir. 1985) (alteration omitted)).

Three aspects of the Settlement Agreement make it clear that the release does not release claims between Ferguson and Ferrante. First, the Settlement Agreement's preamble notes that "Aurora and Doug [Ferguson] are sometimes referred to herein as the 'parties.'" It does not define Ferrante as a party at any point. Second, although Ferrante signed the Settlement Agreement twice, he did so once for Aurora Information Security & Risk LLC and once in his individual capacity "with respect to paragraph 17 only."[6] Settlement Agreement (capitalization

---

[6] Paragraph 17 of the Settlement Agreement provides:

> None of the officers, directors, shareholders, principals, general partners, limited partners, members, managers, or employees of Aurora shall be personally responsible for any of the obligations set forth herein. In the event that Aurora files for bankruptcy, insolvency, reorganization, or fraudulently conveys a majority of its asserts, or undergoes a similar even to the aforementioned prior to the full payment of all monies owing to Doug [Ferguson], or if any payment made hereunder is reclaimed by creditors or other claimants, including any governmental entities, in a bankruptcy or other proceeding, Matthew Ferrante of Aurora shall assume personal liability and shall be joint and

omitted). Finally, the language of the Release and Indemnification section provides that "the parties agree to release each other from all actions," without a whisper of Ferrante (individually or as an officer of Aurora, although he is mentioned in the latter capacity as someone whose actions could render the release inapplicable).[7] The contract's release thus unambiguously releases only claims between Ferguson and Aurora. There is no evidence on which a factfinder could base a decision that the Settlement's release applies to claims against Ferrante.[8] *Accord Peterson*, 935 F. Supp. 2d at 641.

### 2. Issues of Fact Preclude Summary Judgment on the Merits of the Claim

Ferrante also seeks summary judgment against Ferguson on Ferguson's fraud and fraudulent inducement claim. Fraudulent inducement requires "'(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [the complaining party]; and (iv) resulting damages.'" *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012) (quoting *Johnson*, 660 F.3d at 143); *see also Violet Realty, Inc. v. Gerster Sales & Serv., Inc.*, --- A.D.3d ---, ---, 6 N.Y.S.3d 896, 896 (4th Dep't 2015).

---

severally liable with Aurora for the payment of any remaining monies owing to Doug in accordance with this Agreement.

[7] In relevant part, Paragraph 12 of the Settlement Agreement provides:

RELEASE AND INDEMNIFICATION: Upon [Ferguson's] Escrow Agent's written confirmation of receipt of payment referenced in paragraph 7 herein, the parties agree to release each other from all actions, causes of action, suits, debts, dues, sums of money, accounts, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, claims, counterclaims and demands whatsoever (collectively "Claims"), except for claims arising out of the breach of this Agreement or those arising as a direct result of gross negligence, fraudulent conduct or willful misconduct of a party hereto (including its principals, employees and agents). . . .

[8] Even if the agreement were ambiguous, that would be a basis to *deny* Defendants' motion for summary judgment. *Cf. Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 257 (2d Cir. 2002).

Ferrante argues that because he will testify that he did not promise Ferguson equity in Aurora or that the company would have "a fixed UK presence," no factfinder could conclude that Ferguson was fraudulently induced to leave Barclays. Defs. Mem. at 27. Of course, the existence of testimony that, if credited, would warrant a verdict for the movant does not mean that summary judgment is appropriate. The evidence that would permit a jury to find – contrary to Ferrante's testimony – that Ferrante did promise Ferguson equity in Aurora is substantial: Ferguson's testimony that Ferrante promised him equity because Aurora would not be able to pay him a salary during the start-up phase, Ferguson Opp. Decl. ¶¶ 6-8, is supported by contemporaneous emails, *id.* Ex. 1, and by business cards that Ferrante created that gave Ferguson the title of Managing Director and Co-Founder, *id.* ¶ 27 & Ex. 4. Ferrante also promised Ferguson his "support, dedication, and loyalty for the business." *Id.* Ex. 2. In short, there is a sharp dispute about what promises Ferrante made to Ferguson.

Ferrante argues that whatever promises he made, Ferguson did not rely on them in deciding to leave Barclays. Defs. Mem. at 27-28. In support of that position, Ferrante points to evidence that after Ferguson left Barclays, Ferguson sent an email suggesting that he had other job offers and that he was not firmly persuaded that Aurora was "going to truly fly." MacMull Decl. Ex. K. This email certainly provides a basis for a factfinder to conclude that Ferguson did not rely on Ferrante's representations in making his decision to resign from Barclays, but it is not the only evidence that the trier of fact will have. Before Ferguson resigned from Barclays, Ferrante emailed Ferguson business plans describing Ferguson as a "high level risk taker," as opposed to "[a] 1099 employee[]." Ferguson Opp. Decl. Ex. 1. Ferguson avers that, in May 2010, Ferrante specifically promised him a 40 percent equity stake in Aurora, which persuaded him to leave Barclays. *Id.* ¶¶ 7-13. This evidence is enough for a jury to conclude that Ferguson relied on Ferrante's representations in deciding to leave Barclays.

The existence of a genuine dispute of material fact precludes summary judgment on Ferguson's claim for fraud and fraudulent inducement; accordingly Defendants' motion for summary judgment as to this claim is denied.

### C. Ferguson's Declaratory Judgment Claim

Plaintiff and Defendants both move for summary judgment on Ferguson's request for a declaratory judgment that he "owns and has the exclusive right to use his trade secrets and confidential business information." FAC ¶ 104. The Court dismisses this claim for lack of subject matter jurisdiction and dismisses both parties' motions for summary judgment on this claim as moot.

"'[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. ---, ---, 133 S. Ct. 1138, 1146 (2013) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). The Declaratory Judgment Act grants district courts jurisdiction in cases "of actual controversy," even if the sole relief sought is declaratory judgment. 28 U.S.C. § 2201(a). The Declaratory Judgment Act's "actual controversy" requirement mandates that courts "consider only whether the adversity of legal interests that exists between the parties is 'real and substantial' and 'admits of specific relief through a degree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95-96 (2d Cir. 2011) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (alterations and other internal quotation marks omitted)); *see also* 28 U.S.C. § 2201(a).

The parties' briefing on summary judgment has clarified that the Court lacks subject matter jurisdiction over this claim. Plaintiff initially struggled to identify the specific information whose ownership is at issue. *See* Memorandum Op. & Order of April 3, 2014, Dkt.

35, at 4. On summary judgment, forced to "put up or shut up," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quotation marks and citation omitted), Plaintiff produced material that he claims constitutes his proprietary information. Defendants concede that they will not seek to prevent Ferguson from using the materials that he has proffered to the Court as the allegedly proprietary information he seeks to protect, but Defendants are wary of releasing him from prospective liability for other information that he may have gleaned during his time at Aurora. Rasey Opp. Decl. Ex. I.

The issue before the Court is not the ownership of materials that have neither been identified nor produced; the Court can only address the question actually before it. Defendants' positions as to the materials over which Ferguson *has* asserted ownership are inconsistent with any subsequent effort to assert ownership over those materials. *See* Defs. Sealing Opp., Dkt. 88, at 2 (describing the information as "everyday business and marketing concepts in the information security industry, many of which are publicly available" and noting that "defendants see nothing that would harm its [sic] business interests through public disclosure"). Ferguson need not fear a direct lawsuit because Defendants have renounced any potential claim to ownership of the materials at issue. *Cf. MedImmune*, 549 U.S. at 129. Accordingly, the question of ownership of the materials presents no "case or controversy" over which the Court could exercise its jurisdiction. *Accord Cohen v. Versatile Studios, Inc.*, No. 13-CV-8280(VEC), 2014 WL 1584055, at *3 (S.D.N.Y. Apr. 21, 2014).[9]

---

[9] While Defendants should be equitably estopped from asserting proprietary ownership over the materials produced as part of this case, they have explicitly refused to absolve Ferguson from potential liability if he utilizes Aurora materials *not* produced as part of this action. *See* Defs. Sealing Opp. at 2 n.2.

## II.  Plaintiff's Motion for Summary Judgment

In addition to moving for summary judgment on his request for a declaratory judgment, Ferguson also moves for summary judgment as to two of Defendants' affirmative defenses and two counterclaims.  These arguments are more persuasive; Plaintiff's motion is GRANTED as to Defendants' thirteenth and twentieth affirmative defenses and fourth counterclaim and DENIED as to Defendants' fifth counterclaim.

### A.  Defendants' Affirmative Defenses[10]

#### 1.  Defendants' Thirteenth Affirmative Defense Is Dismissed

Defendants' thirteenth affirmative defense provides: "[t]he claim for fraudulent inducement is barred on the ground that it amounts to a mere recapitulation of [Plaintiff's] contract claims to circumvent the effect of Plaintiff's settlement, abandonment and waiver of such claims pursuant to the Settlement Agreement."  Plaintiff moves for summary judgment, claiming that the Settlement Agreement does not release claims against Ferrante.  As discussed *supra* in the context of Defendants' motion for summary judgment on Plaintiff's fraudulent inducement claim, the release in the Settlement Agreement applies only to Aurora.  Ferguson did not release Ferrante from liability, just as Ferrante did not incur liability for any potential breach of the Settlement Agreement (to which he was not individually a party).  Accordingly, there is no evidence from which a reasonable factfinder could conclude that Ferrante should prevail on his thirteenth affirmative defense.

Defendants rely on Ferguson's testimony that he did not believe that he had outstanding claims against Ferrante when he executed the Settlement Agreement.  *See* MacMull Decl., Dkt.

---

[10]  "Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense – on which the defendant bears the burden of proof at trial – a plaintiff 'may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case.'"  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *DiCola v. SwissRe Holding (N. Am.), Inc.*, 996 F.2d 30, 32 (2d Cir. 1993) (alterations and other internal quotation marks omitted)).

59, Ex. F at 6-7. Defendants contend that Ferguson's testimony establishes that, when he executed the Settlement Agreement, Ferguson believed that he was releasing Ferrante from all outstanding claims. Defs. Opp. at 13. This argument fails for two reasons. First, Ferguson testified that he did not believe that he had any claims against Ferrante, not that he affirmatively intended to release any claim that he might have against Ferrante. Second, the Settlement Agreement contains a merger clause, which states that the contract is an integrated document reflecting a complete statement of the bargain between the parties. Settlement Agreement § 18. Courts "deem the parties, by defining the scope of their agreement in a merger clause, to have intended 'to require the full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to alter, vary or contradict the terms of their writing.'" *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F.3d 807, 816 (2d Cir. 2014) (quoting *Jarecki v. Shung Moo Louie*, 95 N.Y.2d 665, 669 (2001)). Ferguson's testimony is precisely the sort of parol evidence that "is admissible only if a court finds an ambiguity in the contract." *Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436 (2013). Here, there is no ambiguity.

### 2. Defendants' Twentieth Affirmative Defense Is Dismissed

Ferguson also moves for summary judgment as to Defendants' twentieth affirmative defense, which provides:

> Plaintiff's claims against Matthew Ferrante are barred by the explicit terms of the Settlement Agreement because his claims as set forth in the Amended Complaint arise under the Settlement Agreement, which also provides that "None of the officers, directors, shareholders, principals, general partners, limited partners, members, managers or employees of Aurora shall be personally responsible for any of the obligations set forth herein."

The quoted language from the Settlement Agreement unambiguously precludes any cause of action against Ferrante for breach of the Settlement Agreement. But Ferguson has brought a breach of contract claim only against Aurora, *see* FAC ¶¶ 73-76; his claim against Ferrante is for

conduct that preceded the Settlement Agreement, *id.* ¶¶ 86-90.  Thus, Ferguson is entitled to summary judgment as to Ferrante's twentieth affirmative defense.

### B.  Defendants' Fraudulent Inducement Claim

Next, Ferguson moves for summary judgment as to Defendants' counterclaim for fraudulent inducement.  This claim seeks to hold Ferguson liable for Defendants' "economic harm arising from Ferguson's breaches [of the Settlement Agreement]."  Countercl. ¶ 143.  The parties' discussion of this claim is confused, in part because Defendants appear not to have identified with particularity[11] the fraud that "induced" them to enter the Settlement Agreement.  In their briefs, Defendants identify two alleged "misrepresentations" that, they claim, fraudulently induced them to enter into the Settlement Agreement.  As a matter of law, neither provides the basis for a fraudulent inducement claim.

Defendants argue that Ferguson fraudulently induced them to enter the Settlement Agreement by representing that he intended to comply with its terms.  But "'general allegations that [a] defendant entered into a contract while lacking the intent to perform it are insufficient to support a fraud claim.'"  *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) (quoting *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995) (alteration omitted)).  That is precisely the gravamen of Defendants' assertions – they claim that Ferguson "entered into the Settlement Agreement intending to reap its benefits without any of its costs."  Defs. Opp. at 16.  But this is the harm that Defendants seek to remedy through their counterclaim for breach of the Settlement Agreement.  Insofar as the "fraud" alleged was Ferguson's fraudulent representation that he

---

[11] Indeed, Plaintiff's motion reads a lot like a Rule 9(b) motion, but it stops just short of invoking the strictures of that provision.  Pl. Mem. at 23-24.  Because Plaintiff answered the counterclaims rather than moving pursuant to Rule 9(b), the lack of particularity in the counterclaims may no longer be fatal to Defendants' cause of action, if Defendants can adduce evidence to support a claim of fraud.  *Sheehy v. New Century Mortg. Corp.*, 690 F. Supp. 2d 51, 66-67 (E.D.N.Y. 2010); *but see MM Ariz. Holdings LLC v. Bonanno*, 658 F. Supp. 2d 589, 594 (S.D.N.Y. 2009).

17

would perform pursuant to the agreement that he signed, Ferguson is entitled to summary judgment.[12] *Weihai Textile Grp. Imp. & Exp. Co., Ltd. v. Level 8 Apparel, LLC*, No. 11-CV-4405(ALC), 2014 WL 1494327, at *16 (S.D.N.Y. Mar. 28, 2014); *Fromowitz v. W. Park Assocs., Inc.*, 106 A.D.3d 950, 951 (2d Dep't 2013).

Second, Defendants assert that Ferguson solicited two Aurora clients prior to the date of the Settlement Agreement (and therefore in violation of the NDA). Defs. Opp. at 17-18; *see* Ferrante Supp. Decl. ¶¶ 15-16. But Defendants are not suing Ferguson for breach of the NDA; they are suing him for fraudulently inducing them to enter the Settlement Agreement.[13] Defendants have pointed to no evidence in the record from which a jury could infer that Ferguson made material representations that caused the Defendants to enter the Settlement Agreement; their fraudulent inducement cause of action "is at bottom an alleged breach of contract in the guise of a tort." *Smalley v. Dreyfus Corp.*, 10 N.Y.3d 55, 59 (2008) (Kaye, C.J.). Accordingly, Ferguson is entitled to summary judgment on the fraudulent inducement counterclaim.

### C. Defendants' Breach of the Duty of Loyalty Claim

Finally, Plaintiff moves for summary judgment as to Defendants' counterclaim that Ferguson breached his duty of loyalty to Aurora. Ferguson argues that he did not owe a duty of

---

[12] Of course, "not every fraud claim is foreclosed in an action also involving a contract." *Wall*, 471 F.3d at 416. In *Wall*, the plaintiff asserted that the defendants had made promises, beyond what was represented in the contract, to induce him to sign the contract. The Court concluded that these promises were not "directed precisely" at the issues addressed in the contract but were instead "collateral to the written settlement agreement." *Id.* at 417. Thus, the fraudulent inducement was *not* that the defendants did not intend to perform the agreement, but that they did not intend to fulfill the separate promises that they made in attempting to persuade the plaintiff to execute the agreement. Relatedly, fraud claims are not foreclosed when individual defendants who are not a party to a contract (for example, because it was executed by their company instead) induce a plaintiff to enter it. *Cf. Nolfi Masonry Corp. v. Lasker-Goldman Corp.*, 170 A.D.2d 363, 364 (1st Dep't 1991).

[13] Defendants do not contend that Ferguson represented that he had complied with the NDA or that any such representation induced Aurora to enter the Settlement Agreement. Similarly, Defendants do not argue that Ferguson induced Aurora to enter the Settlement Agreement by fraudulently representing that he would release all claims against Ferrante. Accordingly, the Court need not determine whether there is evidence to support those theories.

loyalty to Aurora but that, if he did, he did not breach that duty. Both arguments present questions of fact that cannot be resolved on summary judgment.

Ferguson argues that an independent contractor[14] owes a duty of loyalty only pursuant to the contract governing his employment. *See, e.g., Barber v. ActKnowledge, Inc.*, 24 Misc.3d 1211(a), at *2 (Sup. Ct. Kings Cnty. 2009) (the duty of loyalty extends "to independent contractors in cases where the agreement between the principal and the independent contractor established an agent-principal relationship"). But the Court of Appeals has recognized that even when "the relationship between the parties was defined by a written contract," – here, the inaptly-named NDA – there may be "circumstances extraneous to, and not constituting elements of, the contract," from which a duty of loyalty might arise. *Clarke-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987). While the NDA has a merger clause, NDA § 9(h), it does not unambiguously purport to define the entire scope of Ferguson's relationship with Aurora; accordingly, whether Ferguson owed a duty of loyalty to Aurora is a question of fact.

If Ferguson did owe a duty of loyalty, there is a genuine dispute as to whether he breached it. The record as presented on summary judgment does not establish, beyond dispute, that Ferguson never made improper use of Aurora's proprietary information in soliciting Aurora's clients for his new company. *Island Sports Physical Therapy v. Burns*, 84 A.D.3d 878, 878 (2d Dep't 2011); *see, e.g.,* Ferrante Supp. Decl. ¶¶ 4-7, 9-10. Accordingly, summary judgment on this issue is inappropriate.[15]

---

[14] Both parties appear content to assume that Ferguson is an independent contractor, although "whether a particular person is an agent or an independent contractor is generally one of fact." *Shaw Creations Inc. v. Galleria Enters., Inc.*, 29 Misc.3d 1213(A), at *5 (Sup. Ct. N.Y. Cnty. 2010).

[15] The Court notes that Ferguson's arguments, while unavailing on summary judgment, may very well be persuasive at trial.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, and Plaintiff's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. The Clerk of the Court is respectfully directed to terminate docket entries 56 and 62. The parties are directed to appear for a status conference June 19, 2015, at 10:00 a.m., in Courtroom 443 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York, 10007.

**SO ORDERED.**

**Date: May 27, 2015**
      **New York, NY**

**VALERIE CAPRONI**
**United States District Judge**