UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/27/2015
```

--------------------------------------------------------- X

DOUGLAS FERGUSON,                           :
                                            :
            Plaintiff / Counter-Defendant,  :
                                            :        13-CV-4468 (VEC)
            -against-                       :
                                            :        MEMORANDUM
MATTHEW FERRANTE, Individually,  and        :        OPINION & ORDER
AURORA INFORMATION SECURITY &               :
RISK, LLC,                                  :
                                            :
            Defendants / Counter-Claimants.:
--------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

        In a separate opinion entered today, the Court decided the parties' cross-motions for

summary judgment.  By joint letter filed October 15, 2014, the parties sought permission to file

materials in support of their submissions under seal or in redacted form.  Joint Letter of October

15, 2014, Dkt. 69.  The Court required the parties to meet and confer to determine which

redactions were necessary, Order of October 15, 2014, Dkt. 70; although Defendants determined

that all submissions could be publicly filed, Defs. Letter of October 29, 2014, Dkt. 71, Plaintiff

sought to file a reduced volume of materials in redacted form, Pl. Sealing Mem., Dkt. 81.  For

the following reasons, the Court DENIES Plaintiff's request to file materials in redacted form.

The parties are directed to file all the materials in unredacted form no later than two weeks after

the date of this opinion, except that this requirement may be stayed if either party files an

interlocutory appeal.  The Court presumes the reader's familiarity with the facts of this case,

which are set forth in more detail in the Court's summary judgment opinion.

**DISCUSSION**

"The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *United States v. Erie Cnty., N.Y.*, 763 F.3d 235, 238-39 (2d Cir. 2014). "The presumption of access is based on the need for federal courts, although independent – indeed, particularly because they are independent – to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). In applying these principles to determine whether sealing is appropriate in a particular case, courts conduct an inquiry that has several stages. First, courts inquire whether the document is a "judicial document" to which a presumption of access would attach. *See Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 167 & n.15 (2d Cir. 2013). If the document is a judicial document, courts next ask whether the presumption of access is the common law right of access or the more robust "'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). If the Court determines that the documents at issue "are subject to a First Amendment right of access," it then looks only to whether it can make "'specific, on-the-record findings that higher values necessitate a narrowly tailored sealing.'" *Erie Cnty.*, 763 F.3d at 241, 243 (quoting *Lugosch*, 435 F.3d at 126). If only the common law presumption of access attaches, courts "determine the weight of the presumption and measure it against competing considerations." *Id.* at 241. In any case in which some sealing of a judicial document is appropriate, the Second Circuit has directed that the Court

should determine whether partial redaction of the private material is "a viable remedy," or whether the document presents "an all or nothing matter." *Amodeo*, 71 F.3d at 1053.

"[D]ocuments submitted to a court for its consideration in a summary judgment motion are – as a matter of law – judicial documents to which a strong presumption of access attaches," regardless of whether the motion in fact terminates a case. *Lugosch*, 435 F.3d at 121-22. Nevertheless, even where the public's presumption of access under both the First Amendment and the common law attaches, "this right can be overcome by 'specific, on-the-record findings that higher values necessitate a narrowly tailored sealing.'" *Erie Cnty.*, 763 F.3d at 243 (quoting *Lugosch*, 435 F.3d at 126). Plaintiff argues that two exhibits merit redactions that make them indecipherable on the public docket – Exhibit 13 to the Ferguson Declaration, Dkt. 65 ("Exhibit 13"), and Exhibit L to the MacMull Declaration, Dkt. 59 ("Exhibit L"). Neither exhibit merits the broad-brush secrecy advocated by Plaintiff; accordingly, Plaintiff's motion is denied.

First, Plaintiff broadly argues that documents containing trade secrets may qualify to be filed under seal. Under some circumstances, trade secrets may defeat even the strong right of public access that attaches to materials submitted in support of summary judgment. *See, e.g.*, *In re Application of N.Y. Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 410 n.4 (2d Cir. 2009) (citing Fed. R. Civ. P. 26(c)). But the presumption of public access is not vitiated at the talismanic whisper of the phrase "trade secrets." *See Saks Inc. v. Attachmate Corp.*, No. 14-CV-4902(CM), 2015 WL 1841136, at *14-19 (S.D.N.Y. Apr. 17, 2015). Instead, courts require an "evidentiary showing" demonstrating the "'need for continued secrecy sufficient to overcome the presumption of access.'" *Nycomed U.S., Inc. v. Glenmark Generics, Inc.*, No. 08-CV-5023(CBA)(RLM), 2010 WL 889799, at *5 (E.D.N.Y. Mar. 8, 2010) (quoting *In re Gabapentin Patent Litig.*, 312 F. Supp. 2d 653, 664-65 (D.N.J. 2004)).

The nature of the work that Ferguson performed for Aurora was relevant to the Court's summary judgment adjudication – particularly because the parties cross-moved as to Ferguson's claim for declaratory judgment that he "owns" the materials that he created at Aurora.  The Court has dismissed Ferguson's request for a declaratory judgment for lack of subject matter jurisdiction; the public's right to examine this material as part of the record against which the Court's performance can be evaluated is important.  Nevertheless, "courts grant confidential treatment under circumstances where trade secrets and material that would place a party at a competitive disadvantage are being used in public filings."  *New York v. Actavis, PLC*, No. 14-CV-7473(RWS), 2014 WL 5353774, at *3 (S.D.N.Y. Oct. 21, 2014).

Plaintiff seeks to redact language on a number of marketing slides that he claims reflect "his confidential and proprietary techniques based on his years of experience on both sides of the information security industry."  Pl. Mem. at 5.  Plaintiff does not, however, explain how any specific information that he seeks to redact implicates this expertise.  *Cf. T-JAT Sys. 2006 Ltd. v. Amdocs Software Sys. Ltd.*, No. 13-CV-5356(JMF), 2015 WL 394075, at *6 (S.D.N.Y. Jan. 29, 2015) (citing *Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 630 (S.D.N.Y. 2011)).  Moreover, Plaintiff appears to have conflated (1) the fact that he utilized particular techniques, (2) his description of his techniques to potential clients, and (3) the techniques themselves.  Accordingly, the Court is left to examine the documents themselves to determine whether they clearly implicate confidential trade secrets.  *Cf. Actavis*, 2014 WL 5353774, at *4.  Finally, Plaintiff attempts to make a showing sufficient to overcome the presumption of public access by a series of identically-worded one-sentence analyses of the redactions sought in each exhibit.  Without a particularized showing, Plaintiff cannot overcome the public's right to the information on which the Court has based its analyses.  Accordingly, Plaintiff's motion is denied.

## I.       Exhibit 13

Plaintiff seeks to redact portions of nine documents within Exhibit 13.  Much of the information that Plaintiff seeks to keep confidential pertains to penetration testing; the Court notes, however, that this concept did not originate with Ferguson or Aurora Information Security & Risk LLC and is not a "secret" concept in need of protection.[1]  Most of the materials that Plaintiff seeks to file in redacted form are marketing materials designed for Aurora to present to potential clients.  While such information might well be produced to a prospective client subject to a non-disclosure agreement or considered confidential by the company presenting it (facts that Ferguson has not established), that is insufficient to merit a sealing order.  *See Saks*, 2015 WL 1841136, at \*14.  Plaintiff apparently believes that the business justifications for a client to engage in penetration testing are secret concepts that he developed; he has not explained the basis for his belief.

### A.   Exhibit 13-A

Exhibit 13-A is a draft presentation entitled "Simple Deliverable Strategy."  It appears to be designed for Aurora to pitch its services to prospective clients.  Ferguson seeks to redact the portions of the presentation that describe the value that he would have been adding to Aurora's customer services.  Although Plaintiff asserts that these slides describe a "unique security solution framework" that he developed, the Court notes that they appear to be generic descriptions of services performed by an information security company.  Accordingly, nothing in Exhibit 13-A is a trade secret.

---

[1]      Indeed, penetration testing is a standard technique used to verify information security.  *See, e.g., Cobell v. Kempthorne*, 455 F.3d 301, 308-09 (D.C. Cir. 2006); *Lawsky v. Condor Cap. Corp.*, No. 14-CV-2863(CM), 2014 WL 2109923, at \*4 (S.D.N.Y. May 13, 2014); *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 388 (S.D.N.Y. 2010).

## B.  Exhibit 13-B

Exhibit 13-B is another presentation entitled "Security Control Template."  Plaintiff seeks to redact all intelligible portions of this slideshow.  While Plaintiff makes the conclusory assertion that the "redacted portions of the presentation provide in[-]depth details and descriptions of the unique security control template and framework that Ferguson developed," Pl. Mem. at 7, the Court notes that he redacted questions such as "Who controls funding" and "Does funding expire?"  That an information security company might ask its clients these sorts of questions is not a secret that overcomes the presumption of access that attaches "where documents are used to determine litigants' substantive legal rights."  *Lugosch*, 435 F.3d at 121.[2]

## C.  Exhibit 13-C

Plaintiff initially sought broader redactions in this document but has now pared down his request.  The crux of Ferguson's proposed redactions appears to be the mistaken belief that he originated the idea of analyzing the economic impact of a potential threat to a client's information security.  This is, of course, not a unique concept.  *See, e.g.,* Colin Guy, *Malvertising: Tort Law's Role in Ridding the Web of Malicious Advertising*, 53 S. TEX. L. REV. 421, 424 (2011); Vincent Johnson, *Cybersecurity, Identity Theft, and the Limits of Tort Liability*, 57 S.C. L. REV. 255, 275-76 (2005); *see also* Christopher J, Coyne & Peter T. Leeson, *Who's to Protect Cyberspace*, 1 J.L. ECON. & POL'Y 473, 491 n.30 (2005).  In addition to this mundane concept, Plaintiff also proposed redacting the specific (not particularly novel) terms that he uses to present other relatively banal ideas.  *See, e.g.,* Ex. 13-C at P022925.  Ferguson has also proposed redacting information pertaining to a hypothetical analysis of a generic threat scenario

---

[2]     While it is possible that other materials in Exhibit 13-B might be better candidates for redaction, Plaintiff has been given two opportunities to identify them with particularity and both times sought overly-broad redactions. The Court reviewed the document in its entirety and has not found anything that is a recognizable "secret" or "proprietary."

to a fictional business. *Id.* at P022928. (Notably, Plaintiff's redactions on this slide reveal that he was analyzing the business impact of a cyber-intrusion to a company's central transaction processing mainframe; these impacts could be envisioned by any student of law, business, economics, or public relations, or by anyone with common sense). This exhibit, too, does not merit redaction.

### D.  Exhibit 13-D

Even in his revised submission, Ferguson contends that almost all of Exhibit 13-D is confidential and must be redacted, purportedly because it "shows the unique methodologies and business models which were developed by Ferguson." Pl. Mem. at 7. It does not; it lists very generic terms (some of which, as Defendant argues, are available on Aurora's website). No "unique" ideas are discernible from the outlay of these common ideas in a variety of flowcharts.

### E.  Exhibit 13-E

Plaintiff redacts broad sections of Exhibit 13-E, a document entitled "Aurora e3 'Pulse' Operators Manual." Plaintiff's ostensibly narrowly-tailored redactions include redacting "adverse press coverage" as a "business impact" of a redacted "attack scenario." Ex. 13-E at P023991. The heavily-redacted document also contains such "insights" as the idea that, if data pertaining to customer transactions is compromised in an attack, one consequence might be the "[l]oss of confidentiality & integrity of transaction data." *Id.* The redactions also describe, for example, the estimated amount of damage (in dollars) that an Aurora red team[3] exercise was able to inflict. *Id.* at P023995. If revelation of this information could harm Ferguson or put him at a competitive disadvantage, his bare assertion that "[t]he entire document reflects a methodology

---

[3]       "Red Team" is a commonly-used term to describe the enemy in a simulation or a penetration test. *See, e.g,* MALCOM GLADWELL, BLINK 103 (Little, Brown & Co. 2005). Ferguson does not appear to contest the public use of that term. *See* Ferguson Decl. ¶ 2.

and business model which Ferguson developed for solving security industry gaps," Pl. Mem. at 7, does not explain how.

### F.  Exhibit 13-F

Exhibit 13-F shows a Statement of Work devised "by Ferguson to assist Aurora salespersons."  The most heavily-redacted section describes what appears to be an industry-standard red team exercise.  Ex. 13-F at P025487-88.  The Court cannot identify why the parts that Ferguson has identified as particularly unsuitable for disclosure are confidential; nothing in Ferguson's submission distinguishes between those portions of the document that he seeks to redact and those portions that he concedes may be publicly filed, aside from the *ipse dixit* that the generic buzzwords that he seeks to redact are "core differentiating and value-added elements" of an otherwise-public document.  This is not a sufficient showing to overcome the presumption of public access.

### G.  Exhibit 13-G

Exhibit 13-G is a presentation that Ferguson transmitted to Ferrante to help train Aurora's salespeople.  The redactions do not protect proprietary materials.  On one slide, for example, Plaintiff has redacted language that provides the business justification for conducting a "red team" exercise, *see* P027701; on another, he appears to seek to protect the fact that Aurora's "red team" took account of the client's attributes in conducting its simulation, *see* P027705. Ferguson's stated logic for the redaction is one sentence, identically worded to his justification for other exhibits.  *See* Pl. Mem. at 8.  This showing is insufficient to overcome the presumption of public access.

### H.  Exhibit 13-H

The next redacted document is a template proposal to approach a fictional company (Acme Rent-a-Car).  Some of the redacted materials – for example, the prices of various services

– could conceivably be confidential if they pertained to Ferguson's company (and if Ferguson offered any basis for the Court to conclude that they were). They do not, however, and most of the other language redacted relates to business jargon used to persuade clients of the value of Aurora's services. *See, e.g.,* P027809. Ferguson has pointed to no compelling justification sufficient to overcome the presumption of public access.

## I.   Exhibit 13-I

The final document in Exhibit 13 is a draft presentation that Ferguson prepared in connection with Aurora's pitch to a prospective client in the healthcare industry. The redactions include, for example, a list of "operations" in which the hospital engages. P028201. Ferguson has not explained the need for redaction or the harm that he would suffer if the information were disclosed. Accordingly, this document – like the rest of Exhibit 13 – should be filed publicly.

## II.   Exhibit L

Ferguson's justification for redacting portions of Exhibit L suffers from the same weaknesses as his justification with respect to Exhibit 13 – in fact, some of the redacted portions are simply duplicates. Accordingly, Ferguson has not made a showing sufficient to overcome the presumption of public access, and Defendants are ordered to file Exhibit L in unredacted form on the public docket.

### A.  Bates P026094-115

This document contains a presentation that was used in Aurora's effort to secure Pfizer as a client. Defendants represent that the document was given to Pfizer and that Pfizer could disseminate it without restriction. Def. Mem. at 9. Ferguson's redactions include such generic phrases as "vigilant leadership," Ex. L at P026096, and self-evident facts, like that Pfizer would not want its "IP, patents, research, studies, [or] R&D data" to be compromised in an attack, *id.* at

P026103.  He has not, however, made a showing that these generic phrases or obvious observations are sufficiently private as to defeat the presumption of public access.

### B.  Bates P024531-42

This draft – apparently written by Ferguson in one hour, *see* Ex. L at P024531 – contains some information specific to Aurora that could be considered confidential (such as the duration and cost of an Aurora "engagement").  *See* Ex. L at P024535.  It was presented to Barclays, which, in turn, was free to show the document to anyone.  Any pricing information was specific to Aurora, and Ferguson has presented no other basis on which to consider anything in the document confidential.  Because Aurora does not seek to protect its information contained in this document, nothing in it trumps the presumption of public access.

### C.  Bates P027607-14

This document, entitled "Enterprise Protection Assurance," is another marketing presentation.  The redactions include the statement that Aurora's products help to "find vulnerable gaps" in a client's system.  *See id.* at P027611.  Ferguson has not explained how any of the redacted information implicates his interests, aside from the bare assertion that the "redacted portions . . . reflect the integrated business model for the delivery of unique services to solve the critical gaps in information security that Ferguson identified."  Pl. Mem. at 9.  The redacted information does not appear to identify gaps in an industry, solve such gaps, or offer anything "unique."  Accordingly, there is no basis to permit this information to be filed under seal.

### D.  Bates P027269-80

This marketing presentation was intended "to introduce potential clients to the products and services offered by Aurora."  *Id.* at 10.  Ferguson's one-sentence justification for his proposed redactions mirrors his unsuccessful attempt to redact P027607-14.  *Id.*  Ferguson's

10

justification for his redactions is no more compelling in this context – he seeks to redact, for example, the presentation's claim that the recipient company's "IP" is "worth protecting." Ex. L at P027273. This is not sufficiently novel or private to defeat the presumption of public access.

### E. Bates P026518-33

This document contains prices for services offered by Aurora, and many other less proprietary or secret facts. *See id.* at P026527. Ferguson, however, does not explain why filing Aurora's pricing information on the public document would harm his interests. Moreover, some of Plaintiff's redactions make little sense – he seeks to redact, for example, the claim that Aurora would help a business "to ensure vital business assets are adequately protected." *Id.* at P026522. Ferguson has not made a showing from which the Court could conclude that the information in this document is his proprietary information and that the public therefore should not be able to use it to evaluate the Court's summary judgment decision. *Cf. Lugosch*, 435 F.3d at 122.

### F. Bates P028188-207, P020173-87, P023967-4019, P022916-35, and P027800-15

These portions of Exhibit L contains documents identical to Exhibits 13-I, 13-A, 13-E, 13-C, and 13-H, respectively. Ferguson offers no additional justification for its redaction in the context of Exhibit L, and the Court finds none.

### CONCLUSION

For the foregoing reasons, Plaintiff's request to file materials in redacted form is DENIED, and the parties are directed to file unredacted versions of all materials filed in support of their cross-motions for summary judgment on the public docket no later than two weeks after

the date of this Order.  If either party appeals from this Order, the Order will be stayed pending

appeal.


**SO ORDERED.**

**Date:  May 27, 2015**                                    **VALERIE CAPRONI**
      **New York, NY**                                     **United States District Judge**